## DOYLE, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, April 2, 1907.

1. **EVIDENCE: Bill of Exceptions: Physician.** Under sections 3149 and 2904, Revised Statutes 1899, the testimony of a practicing physician preserved in a bill of exceptions may be read in evidence, if such physican was engaged in the discharge of his professional duties at the time of the trial.

2. ———: ———: ——: **Competency of Bill of Exceptions.** Under section 2904, Revised Statutes 1899, the facts which would authorize the reading of a deposition may be established by the testimony of the deposing witness or the officer taking the same, but this could not apply to testimony in a bill of exceptions and other proof must be resorted to to show the facts which would make the testimony of the practicing physician preserved in the bill of exceptions competent.

3. ———: ———: ———: ———: **Serving of Subpoena.** The summoning of a practicing physician as a witness is not a prerequisite to reading his deposition or his evidence preserved in the bill of exceptions.

4. ———: ———: ———: ———: ———. Where the testimony of a physician preserved in a bill of exceptions was read in evidence without sufficient evidence to show it was admissible, it was proper, after the close of the testimony, to introduce evidence showing that the physician, on the day his testimony was read, was engaged in his professional duties.

5. ———: ———: ———: ———: ———. But, after the introduction of such testimony, it was error to refuse a subpoena to the opposite side to bring in the physician as a witness.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

REVERSED AND REMANDED.

*Boyle & Priest* and *J. W. Jamison* for appellant.

To entitle plaintiff to read in evidence the testimony of Dr. Waldo Briggs, as preserved in the bill of exceptions of the former trial, it was necessary for him to

show by competent and legal evidence, first, that the witness had been properly subpoenaed, and second, that witness was engaged in his professional duties at the time of the trial. R. S. 1899, secs. 2904, 3149. All the testimony as to the whereabouts of the witness Dr. Waldo Briggs at the time of the trial, and as to whether he was engaged in his professional duties was purely hearsay and incompetent. Rothwell v. Jamison, 147 Mo. 609; Chouteau v. Searcy, 8 Mo. 733; Wood v. Hicks, 36 Mo. 326.

*A. R. Taylor* for respondent.

BLAND, P. J.—This is the second appeal from a judgment in plaintiff's favor. On the first appeal the judgment was reversed and the cause remanded for new trial. On the second trial the jury assessed plaintiff's damages at seventeen hundred dollars. The only error relied on, to reverse the second judgment, is alleged to have been committed by the court in permitting plaintiff, over defendant's objection, to read in evidence, from the bill of exceptions, filed on the first appeal, the evidence of Dr. Waldo Briggs, who testified for plaintiff at the first trial but was not present at the second. The action was to recover damages for personal injuries caused by a collision of one of defendant's street cars with a carriage in which plaintiff was riding on Florissant avenue, in the city of St. Louis. The principal injury received by plaintiff was to his head.

Dr. Briggs testified on the first trial, that he had examined plaintiff's head and found a portion of the skull pressed down which could have been caused by a blow with a blunt instrument, or by a fall upon a hard, blunt substance. He testified to the damaging effects the depression had, and would continue to have until it should be removed by an operation. Other professional men and experts, who examined plaintiff's

head, testified there was no depression of the skull whatever and no evidence that it had been injured, so it will be seen that Dr. Briggs' evidence was very material, in respect to the quantum of damages plaintiff should recover. Hence, if error was committed by permitting plaintiff to read the Doctor's evidence from the bill of exceptions, the judgment should be reversed. Section 3149, Revised Statutes 1899, provides: "Whenever any competent evidence shall have been preserved in any bill of exceptions in a cause, the same may be thereafter used in the same manner and with like effect as if such testimony had been preserved in a deposition in said cause," etc. Section 2904, chapter 18, Revised Statutes 1899, provides: "Examinations or depositions taken and returned in conformity to the provisions of this chapter may be read and used in evidence in the cause in which they shall have been taken. . . Fifth, if he be a judge of a court of record, a practicing attorney or physician, and engaged in the discharge of his official or professional duty at the time of the trial." This section also provides that the facts which authorize the reading of the deposition may be established by the testimony of the deposing witness or the officer taking the same. In the circumstances, neither of these statutory methods of showing that Dr. Briggs was engaged in his professional duties at the time of the trial were available, but as the statutory modes of proof are not exclusive, plaintiff might resort to other sources, to lay a proper foundation for the introduction of the evidence. [Kirton v. Bull, 168 Mo. 622.] The evidence shows Dr. Briggs resides in the city of St. Louis and has an office on North Jefferson avenue, in said city, and that he is a practicing physician. To show that he had been summoned to attend the trial as a witness in plaintiff's behalf, plaintiff testified that a few days before the cause was set for trial, he delivered a subpoena to the doctor, which had been issued by the clerk of the court and di-

rected to Dr. Briggs, commanding him to appear and testify in the cause in behalf of plaintiff. Subpoenas may be served by the sheriff, marshal, or any constable in the county in which the witness to be served resides or may be found, or by any disinterested person, who would be a competent witness in the case. [R. S. 1899, sec. 4671.] In H. & N. L. Plank Road & Bridge Co. v. Bowling, 53 Mo. l. c. 312, and Larimore v. Bobb, 114 Mo. l. c. 452, in construing the statute (4671, supra) the term "disinterested" was disregarded and it was held a party to a suit may serve subpœnas. We think it is immaterial whether Dr. Briggs was subpœnaed or not, for the statute does not require as a prerequisite to the reading in evidence of a deposition, or from a bill of exceptions, that the deposing judge, lawyer or physician shall have been summoned as a witness. If the absent witness be a physician or lawyer, it only requires that he shall be engaged in the discharge of his professional duties at the time of the trial. For the purpose of showing that Dr. Briggs was engaged in the discharge of his professional duties, plaintiff showed that on the day his evidence was read from the bill of exceptions he and his counsel telephoned to Dr. Briggs' office and got an answer that he was out of town. Plaintiff testified that he knew the Doctor to have been engaged in the practice of medicine in the city of St. Louis for fifteen years. On this evidence plaintiff, over the objection of defendant, read the evidence of Dr. Briggs from the bill of exceptions.

At the close of all the evidence, over the objection of defendant, plaintiff introduced as a witness, Mrs. Cook, who testified she was housekeeper for Dr. Briggs at No. 500 North Jefferson avenue, where the Doctor has his office; that his home is on Forest Park Boulevard; that she answered calls made at the office and answered the telephone call of plaintiff on the day before, inquiring if

the Doctor was in. The following extracts are taken from Mrs. Cook's examination:

"Q. What was Dr. Briggs doing all day yesterday? A. He was away in the country on a surgical case.

"Q. What place in the country was it? A. I think it was Spokay, Ill.

"Q. Here in Illinois? A. That is where he was yesterday; yes, sir.

"Q. Where is he to-day? A. On an operation case again to-day.

"Q. Where? A. In the country, sir; on an operation case.

"Q. On the same case? A. Yes, in the country again to-day. . . .

"Q. All you know about where he was is what Dr. Briggs himself, told you. A. No, sir; because I got it it over the telephone. It was spoken. A long distance call.

"The Court: You say you got a long distance call? A. Yes, I got it yesterday.

"Q. From where? A. Spokay, Ill.

"Q. Where is that? A. Somewhere in Illinois; Spokay—some such name.

"Q. You are relying, in what you say about where he is, upon what you got over the telephone? A. No, sir; he told me himself that he was going there.

"Mr. Jamison: Q. And he told you he was going into the country to-day? A. He has gone to the country—

"Q. He told you? A. I say he has gone to the country. I know it from his home.

"Q. You don't know where he was except what he told you or somebody else told you? You didn't see him out there? A. No, sir. . .

"The Court: It does not appear very clearly how she knows.

Doyle v. Transit Co.

"Mr. Taylor: Q. You keep his office? A. Yes, I keep his office.

"Q. That is what you mean when you say you are his housekeeper? A. Yes, sir.

"Q. And he had his office and leaves all his messages with you, don't he? A. Yes, sir.

"Q. All about his business, and as to where he is going? A. Yes, sir.

"The Court: Who receives his calls? A. I receive them myself.

"Q. Is that your regular business in his office? A. Yes, sir.

"Q. You make note of them and hand the information in some form to him when he returns to the office? A. Yes, I give him all the information that comes to him.

"Q. You are regularly in attendance at his office? A. Yes, sir.

"Q. Did he tell you he was going to Illinois yesterday? A. Yes, sir. . . .

"The Court: You made the statement that he is gone to Illinois again to-day? A. Yes, sir.

"Q. How do you know? A. He has gone away to-day and he said that he was going there.

"Q. That is the way you know it A. That is just what he told me.

"Q. Did you receive a second call from him? A. No, sir, I did not receive a second call—just one call.

"Did he in fact leave the office this morning? A. Yes, sir.

"Q. Was he out of the office all day yesterday? A. All day yesterday. He was away.

"Q. What time did he leave yesterday? A. Early in the morning, sir.

"Q. What do you mean by early in the morning? A. About nine o'clock.

"Q. When did he return? A. He came home about three o'clock this morning.

"Q. Does he reside at the same place where his office is? A. No, sir.

"Q. What time did he leave his office this morning? A. Early this morning, about the same time.

"Q. You mean about nine o'clock? A. Yes, sir.

"Q. What time did you leave the office this morning? A. I came here with that gentleman, there.

"Q. But what time did you leave the office this morning? A. About a quarter to eleven.

"Q. And the doctor had not returned between the time he left this morning and the time you left? A. I have not seen him since yesterday morning, sir.

"Mr. Jamison: Q. You say Dr. Briggs has a residence away from his office? A. Yes, sir.

"Q. Where is his residence? A. On Forest Park Boulevard.

"Q. Where is his office? A. 500 North Jefferson avenue.

"Q. You stay at the office? A. Yes, sir.

"Q. You were not at his home yesterday? A. Yes, I was yesterday. I answered Lawyer Taylor's call.

"Q. I say, were you at his residence yesterday? A. I don't live at his residence.

"Q. That is not what I asked. Were you there yesterday? A. No sir; I was not there.

"Q. Have you been there to-day? A. I have never been there since I have been in the city.

"Q. You don't know of your own personal knowledge whether he was there or not, do you? A. No, sir; only just what he told me.

"Mr. Jamison: I renew my motion to strike out the testimony of this witness.

"Motion overruled, to which ruling of the court the defendant by counsel then and there duly excepted.

"Mr. Jamison: If the court please, I ask on behalf

of the defendant that a subpoena issue returnable forthwith for Dr. Briggs, to be brought here in this case."

As Dr. Briggs' evidence, read from the bill of exceptions, was still open to attack by a motion to strike it out, we think it was within the sound discretion of the court to permit Mrs. Cook to testify after the defendant had closed its evidence. After Mrs. Cook testified, defendant's counsel asked for a subpoena for Dr. Briggs, stating that he expected to'prove "that the Doctor was in the city yesterday (the day his deposition was read) and is here now." Until her evidence was taken, no evidence had been offered by plaintiff warranting the court in admitting the deposition of Dr. Briggs, and it was open to attack by motion to strike it out. But we do not think it was within the discretion of the court to deny defendant's request for a subpoena for Dr. Briggs. It was asked for at the proper time and it was a denial of equal justice to refuse a subpoena for the purpose of bringing in a witness to overthrow material evidence introduced by the plaintiff. For error in denying defendant's request for a subpoena for Dr. Briggs, the judgment is reversed and the cause remanded. All concur.