Robert N. JENNI and Helen A. Jenni,
Plaintiffs-Respondents,

v.

John M. GAMEL et al., Defendants,

E. R. B. Land, Inc., a Missouri Corporation, Defendant-Appellant.

No. 41459.

Missouri Court of Appeals,
Eastern District,
Division One.

May 27, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 18, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Benson Cytron, House Springs, for defendant-appellant.

Myron Gollub, Frank Hamsher, St. Louis, for plaintiffs-respondents.

STEWART, Judge.

This case is before us for the second time after a retrial. See *Jenni v. E.R.B. Land, Inc.*, 541 S.W.2d 743 (Mo.App.1976).

In this court-tried case defendant E.R.B. Land, Inc. (E.R.B.), the record owner of certain real estate, appeals from a judgment of the circuit court that in essence impressed a lien upon the real estate to secure an indebtedness owed to plaintiffs as evidenced by a note and unrecorded deed of trust executed by the four Gamel defendants (Gamels).

It is contended by E.R.B. that the trial court erred (1) "in granting plaintiffs a lien for a purported debt because the plaintiffs had not been vigilant in protecting their interest . . . ," (2) in establishing a lien against the interest conveyed by David Gamel because there was no evidence that he had executed a contract to purchase or a note, or other evidence to support the relief granted, (3) in holding that plaintiffs' lien was superior to a $5,000.00 deed of trust because plaintiffs made no such claim in their pleadings.

■ Our review of this case has been hampered by the fact that we have been furnished with only one of the thirty exhibits used in the case.[1] We must assume that the exhibits are favorable to the trial court's findings. *Paulsen v. Harold Tippett Oil Co.*, 593 S.W.2d 615 (Mo.App.1980).

Plaintiffs were the owners of a 201 acre farm in Jefferson County. In 1965 they sold one acre to the City of Festus. In July, 1966, they sold 122 acres of the farm to Robert Williams of Sunset Realty Company for $29,000.00. Mr. Williams was making the purchase for Vigus Quarries.

In August of 1966 the plaintiffs negotiated with John M. Gamel and his wife Mildred for the sale of the remaining 78 acres that contained a two story frame house, two garages, smoke house, two chicken houses, dairy barn and stable, large hay shed, corn crib, milkhouse and three machine sheds for $39,000.00. The Gamels ar-

---

1. The only exhibit is the contract of sale between plaintiffs and the Gamels which is attached to and made a part of plaintiffs' petition.

ranged for and paid an attorney to draw up the contract of sale, a note and deed of trust. The contract called for a down payment of $5,000.00 with the balance of $34,000.00 to be paid in monthly installments of $219.80 over a period of 25 years. The obligation was to be secured by a note and deed of trust "on said premises, in the form ordinarily used in this State." The parties met at the attorney's home on August 12, 1966 where the contract was executed. John M. Gamel, Mildred Gamel, his wife, and their son John C. Gamel signed the contract. John M. Gamel signed the contract for his son David Gamel. The note and deed of trust were signed in the same manner. The Gamels and plaintiffs received an amortization table. Plaintiffs received the note but they did not receive the deed of trust. The deed of trust was never recorded. Shortly after the day they were in the attorney's home the plaintiffs received a warranty deed to the premises making transfer to the Gamels. They executed the deed before a notary public and delivered the deed to the Gamels in accordance with the instructions contained in a letter from the lawyer.

In order to make the down payment the Gamels borrowed $5,000.00 from John M. Gamel's father for which they executed a note and deed of trust dated November 26, 1966. The deed of trust was subsequently recorded.

The Gamels experienced financial difficulties in 1968. No payments were made upon the $5,000.00 note held by John M. Gamel's parents, John W. Gamel and his wife Halcie. Payments of $5,915.16, of which $1,415.01 was repayment of principal, were made on the Jenni note. The last payment on that note was in October of 1968. There was a principal balance due of $32,584.99 at that time. The Gamels advised Mr. Jenni of their problems and told him that they would try to sell the farm and pay off the note.

In early 1969 Halcie Gamel called Mr. Robert Williams and told him she and her husband had a note for $5,000.00 secured by a deed of trust on the real estate that is the subject of this action. She explained that the note was signed by her son, daughter-in-law, and two grandsons; that nothing had been paid on the note and that they needed money but did not want to take legal action against the family members. Mr. Williams contacted the president and sole stockholder of E.R.B. and told him that the note and deed of trust could be purchased for around $3,500.00. Mr. Williams was told to go ahead with the purchase. Mr. Williams purchased the note and deed of trust on behalf of E.R.B. for $3,450.00 on February 5, 1969.

When Mr. Williams delivered the check and received the note and deed of trust he met Mildred Gamel, who advised him that the Gamels were thinking of selling the farm. Mr. Williams as the agent for E.R.B. subsequently negotiated for the purchase of the farm from the Gamels. His contacts were primarily with Mildred Gamel.

Mr. Williams conferred with Mrs. Gamel on two or three occasions. He was aware that only the deed of trust to John W. Gamel and Halcie Gamel was recorded. Mr. Williams was advised that there was still some $32,000.00 due plaintiffs for the purchase of the farm. They agreed that the Gamels would accept $2,000.00 for their "equity" in the property and the purchaser would pay Mr. Jenni the balance due. Mildred Gamel testified that on one occasion while discussing the sale of the property to Mr. Williams' principal she said to him "[n]ow that cancels that five thousand dollar note that you bought from my father-in-law and that pays off Mr. Jenni and that gives us our money for the equity. He said, yes, that is right." Mrs. Gamel showed Williams the amortization table upon which she had made a record of the payments the Gamels had made and indicated the amount still owed. She offered to give him the amortization table. He advised her that the schedule would not be needed because "[w]e would just take care of the whole sum with Mr. Jenni."

Upon reaching this agreement Mr. Williams prepared an option contract to purchase the property which was signed by

John M. Gamel and Mildred Gamel. Subsequently Mr. Williams signed the name of the president of E.R.B. on behalf of E.R.B., acknowledged it, and placed it of record. He then prepared three quit-claim deeds and took them to Mr. and Mrs. John M. Gamel. Mr. and Mrs. John M. Gamel signed one of the deeds. Mr. Gamel signed as attorney in fact for his son, John C. Gamel. The third deed was sent to David who was then 22 years of age and living in California. David and his wife executed the deed on February 17, 1969.

There is evidence that Mr. Jenni was advised by Mrs. Gamel that they had a buyer for the farm and that he would get his money in a lump sum. Because Mr. Jenni did not want to be paid in a lump sum, for tax purposes, he called Mr. Williams and Mr. Williams told him to forward the information concerning the payments and balance due. Mr. Jenni then sent a letter to Mr. Williams setting forth the amount of monthly payments and advising him of the balance then due. Mr. Williams returned the letter with a note telling him he would have to speak to the president of the purchaser. E.R.B. refused to recognize any interest of plaintiffs in the farm.

E.R.B.'s first point on appeal reads "The Trial Court Erred in Granting Plaintiffs a Lien for a Purported Debt Because the Plaintiffs Had Not Been Vigilant in Protecting Their Interest, and the Failure to Obtain a Lien Was the Result of Their Negligence."

■ E.R.B. did not plead the theory it now espouses. The only affirmative defense pleaded by E.R.B. was the statute of limitations. It did not seek to have its answer amended so as to bring this defense to the attention of the trial court. E.R.B.'s requested findings of fact do not cover this defense. The court did not adjudicate the issue. While E.R.B. was not required to file a motion for new trial and it is not restricted because it did so we still do note that no mention of the present theory of defense was brought to the court's attention in that motion. A party may not change his theory of the case upon appeal. We must consider the case on the same theory upon which it was tried in the trial court. *Grimes v. Armstrong*, 304 S.W.2d 793, 799 (Mo.1957). *McIlroy v. Hamilton*, 539 S.W.2d 669 (Mo. App.1976). The issue sought to be raised by E.R.B.'s first point is not before us for our consideration.

■ For its second point E.R.B. contends that the court erred in establishing a lien in plaintiffs' favor on the interest in the real estate that was conveyed to E.R.B. by David Gamel because there is no evidence that David became obligated to plaintiffs or encumbered his interest in the real estate. Plaintiffs rely primarily upon the answer filed on behalf of John M. Gamel, Mildred Gamel, John C. Gamel and David Gamel. The answer admits that "they" executed and delivered a note in the amount of $34,-000.00 secured by deed of trust to plaintiffs. Plaintiffs contend that these allegations constitute a conclusive judicial admission by David Gamel that is binding upon E.R.B., even though plaintiffs introduced evidence to the contrary. Plaintiffs cite us no authority for this assertion nor can we find such authority. It is generally held that the admission of a fact in the pleading dispenses with the necessity of proof of that fact. *Wehrli v. Wabash Railroad Co.*, 315 S.W.2d 765, 773 (Mo.1958). The admission of a fact by a party in his pleading however, is not binding upon him when his adversary does not rely upon the judicial admission but rather introduces evidence to the contrary. In such case the issue is one for the trier of fact. *Plemmons v. Pevely Dairy Co.*, 241 Mo.App. 659, 233 S.W.2d 426 (1950).

In the present case Mr. Jenni testified that David Gamel was not present when the documents were executed and that John M. Gamel signed David's name. David did not testify at the trial. The trial court found "[t]hat there is no evidence that the defendant David M. Gamel either orally or in writing agreed to be indebted to the plaintiffs," and "[t]hat there is no evidence that the defendant David Gamel agreed to have any interest which he owned in the real property which is described in plaintiffs' petition subjected to a lien."

The judgment of the trial court established a secured interest in the subject real estate in the total sum of $59,768.78 as of July 25, 1977 with interest at the rate of 6% per annum until paid arising out of the indebtedness "created by a note in the amount of $34,000.00, dated July 1, 1966 . . . executed by John M. Gamel, Mildred Elizabeth Gamel, John C. Gamel and David E. Gamel . . ." secured by unrecorded deed of trust. The judgment declared the secured interest to be a priority lien upon the subject real estate.

The portion of the judgment subjecting David Gamel's interest to the lien does not comport with the findings of fact. Our review of the transcript reveals sufficient substantial evidence to support the findings of fact but not to support the judgment in this respect.

Plaintiffs in their brief state that David "has by word and deed expressly affirmed his obligation on the note and deed of trust, and has never in any manner disaffirmed the obligation"; that "David Gamel actually affirmed the obligations after reaching majority." We are given no reference to the transcript in support of these assertions. We can find no evidence that David was aware of the fact that his father had executed the note and deed of trust on his behalf. The only reference to payment by David that might indicate that he was aware of the obligation is found in the cross-examination of Mr. Jenni. Mr. Jenni testified that the Gamels informed him they would not be able to make payments on the note and would try to sell the farm. When he was asked why they could not pay the following occurred:

"Q (Atty. for E.R.B.) John Gamel was out of work?

A And the sons were out of work. It was a mutual thing. *He and the sons were all working and making payments.* (Emphasis added)

Mr. Jenni had also testified that after the first few payments on the note were made to him he changed the methods of payment. Payment was made directly to his bank and credited to his bank account.

It is apparent that the court did not give any weight to this testimony as creating an obligation on the part of David. Further, we cannot say that David's conveyance to E.R.B. by quit-claim was a recognition of any obligation upon his part. The parties who obligated themselves to purchase the real estate could designate whom they wished as grantees in the deed. We hold that David's interest was not encumbered by the unrecorded deed of trust and thus the trial court erred in adjudging a lien on any interest conveyed to E.R.B. by David.

We must next consider the extent of the interest conveyed to David, which he in turn conveyed to E.R.B. This issue was not addressed by the parties but is indispensible to the disposition of the case. As we read the briefs of the parties, it is conceded that the deed from plaintiffs was made to "John Melvin Gamel and Mildred Gamel, his wife; John Clyde Gamel, and David Gamel, as Joint Tenants or to the survivor of them." There are no recent Missouri cases that discuss the issue. As stated in *Hall v. Stephens*, 65 Mo. 670, 677 (1877) and as generally held, "when husband and wife are co-grantees or co-devisees with a third person, the last name takes one moiety and the husband and wife the other . . . . If there are two other persons co-grantees or co-devisees, besides husband and wife, then the subject matter of the grant or devise is vested one-third in the husband and wife, and the remaining two-thirds in the other persons in equal proportions, and so on, in accordance with the number of persons entitled; the husband and wife always representing a single unit or integer of legal identity."

Our research has revealed a case in which it was held that a conveyance to two married couples "all as joint tenants" created a joint tenancy among all grantees rather than two tenancies by the entirety with each couple having one moiety in joint tenancy with the other. See *Fekkes v. Hughes*, 354 Mass. 303, 237 N.E.2d 19 (1968). The case is distinguishable from the case before us, particularly because of the

use of the word "all" before the words "as joint tenants."

In any event we are constrained to follow the *Hall v. Stephens,* supra. The equitable lien in this case attaches only to an undivided two-thirds of the real estate that is the subject of this action.

E.R.B. also urges that the court erred in holding that plaintiffs' equitable lien had "priority in all respects over all and any interest in said real property of any description whatsoever of any of Defendants . . ." including the note and deed of trust that E.R.B. purchased from John W. Gamel, for the reason that the pleadings did not make reference to that note and deed of trust.

■ There was sufficient evidence from both plaintiffs and E.R.B. that part of the consideration for the purchase of Gamels' "equity" in the farm would be the cancellation of the note. From this it is clear that the deed of trust securing the $5,000.00 note was merged into the title of E.R.B. See *Shiner v. Polk,* 374 S.W.2d 550 (Mo.App. 1963). The issue, though not specifically pleaded, was in the case and plaintiffs' petition contained a general prayer for relief.

■ Once having obtained jurisdiction a court of equity may grant all of the relief within the fair intendment of the pleadings that is sustained by the evidence. *Rains v. Moulder,* 338 Mo. 275, 90 S.W.2d 81 (1936). Inherent in the case at bar was not only the existence of the equitable lien but also its status. All parties necessary to the determination were before the court. The evidence necessary to give complete relief was also before the court. To have failed to rule this issue would only have added more fuel to fire this protracted litigation which we feel can and should be terminated at this juncture.

■ The trial court in its judgment decreed that "Erb Land, Inc., is a constructive trustee in respect of" the secured interest of plaintiffs. The elements of a constructive trust are not present as between plaintiffs and E.R.B. nor do we believe it is a necessary or appropriate remedy in this case. E.R.B. purchased the real estate in question from the Gamels and is the owner of the property subject to the lien that was created by the unrecorded deed of trust. It is the lawful owner of the property. See *O'Leary v. McCarty,* 492 S.W.2d 124, 127 (Mo.App.1973). The establishment of the equitable lien in this case is the appropriate remedy for the protection of plaintiffs' interest in the farm.

■ With the exception of the first issue discussed herein, none of E.R.B.'s Points Relied On questions the propriety of the establishment of a lien upon the subject real estate, thus a lengthy discussion of the matter is not warranted. There is substantial evidence of an agreement between plaintiffs and John M. Gamel, Mildred Gamel, his wife, and their son John C. Gamel, to make the 78 acre farm security for the payment of the note given in payment for the farm. There was also sufficient evidence that Mr. Williams, the agent of E.R.B., had actual and constructive knowledge of this agreement. All of the elements of an equitable lien are present in this case. *Pine Lawn Bank and Trust Co. v. Urbahns,* 417 S.W.2d 113 (Mo.App.1967).

The judgment of the trial court is valid insofar as it establishes an equitable lien as security for the indebtedness created by the note executed by John M. Gamel, Mildred Gamel and John C. Gamel. The lien is limited to an undivided two-thirds of the real estate. The judgment is further modified so as to eliminate the establishment of a constructive trust. In all other respects the judgment is affirmed.

KELLY, P. J., and SNYDER, J., concur.